GOLDMAN, Appellant, v. HOME MUTUAL INSURANCE COMPANIES, Respondent.

*January 7—February 4, 1964.*

336

For the appellant there were briefs and oral argument by *Harry Halloway* of Milwaukee.

For the respondent there was a brief by *William S. Pfankuch,* and *Byrne, Bubolz, Spanagel & Pfankuch,* all of Appleton, and oral argument by *William S. Pfankuch.*

BEILFUSS, J. The principal issue is, Does the complaint state facts sufficient to constitute a cause of action?

The rules for testing a complaint upon demurrer on this ground, so often stated they need no citation, are: (1) Facts alleged are assumed to be true; (2) the complaint is to be liberally construed and given the benefit of every reasonable inference; and (3) if the complaint states *any* cause of action the demurrer must be overruled.

This complaint suggests two possible causes of action, one for attorney's fees under statutory lien sec. 256.36, and the other for damages for interference with contractual rights of third persons.

*Statutory Lien for Attorney's Fees.*

Secs. 256.36, 256.37, and 256.38, Stats., set forth our statutory authority for attorneys' liens.

Sec. 256.38, Stats., provides in substance that no settlement in a personal-injury or wrongful-death *action* shall be valid unless consented to by the attorney appearing for the claimant or by order of the court. This section has no ap-

plication here for the reason no action on the claim had been started.

Sec. 256.36, Stats., creates the lien:

"LIEN ON PROCEEDS OF ACTIONS TO ENFORCE CAUSE OF ACTION. Any person having or claiming a right of action, sounding in tort or for unliquidated damages on contract, may contract with any attorney to prosecute the same and give such attorney a lien upon such cause of action and upon the proceeds or damages derived in any action brought for the enforcement of such cause of action, as security for his fees in the conduct of such litigation; when such agreement shall be made and notice thereof given to the opposite party or his attorney no settlement or adjustment of such action shall be valid as against the lien so created, provided that such agreement for fees shall be fair and reasonable, and this section shall not be construed as changing the law in respect to champertous contracts."

Insofar as a statutory lien is concerned, Goldman's complaint alleges only that he was retained by the claimant to prosecute the claim for personal injuries against Home Mutual and that he, Goldman, notified Home Mutual of such retainer. Under the statute the contract must have two material provisions. The claimant must agree to retain the attorney to prosecute his claim and must "give such attorney a lien upon such cause of action and upon the proceeds or damages derived in any action brought for the enforcement of such cause of action." Mr. Goldman does not allege that Saunders agreed to give him a lien. An allegation of retainer is not sufficient to imply an agreement for a lien.

Sec. 256.36, Stats., further provides, "when such agreement shall be made and notice thereof given to the opposite party or his attorney no settlement or adjustment of such action shall be valid as against the lien so created." A mere notice by the attorney that he has been retained by the

claimant is not sufficient notice of "such agreement" to inform the opposite party of the lien.

An agreement for a lien and notice of the lien are prerequisites to creation and enforcement of the lien. The failure to allege them is fatal to a complaint to enforce the lien. This is not a case where terms of the contract are not set forth and the complaint is subject to motion to make more definite and certain. *Morse v. Gilman* (1863), 16 Wis. 531 (*504), 534 (*507); *Young v. Lynch* (1886), 66 Wis. 514, 29 N. W. 224. The facts alleged in this complaint do not establish the basic requirement of the creation of the lien. The complaint is properly challenged by demurrer.

*Interference by Third Person with Contractual Relations Between Attorney and Client.*

The complaint states that an agent of Home Mutual wrongfully induced Saunders to breach his contract of retainer with Goldman by settling with Saunders without consent of Goldman.

Home Mutual contends that the adoption by the legislature of the attorney-lien statutes supersedes the right of the attorney based upon interference with contract and that the lien statute is the exclusive remedy available to the attorney. In support of this position it cites 1 C. J. S., Actions, p. 974, sec. 6 b.:

"Where a code or statute creates a new right or liability that did not exist at common law or under prior statutes, and also provides a specific remedy for the enforcement thereof, as a general rule such statutory remedy is exclusive, . . ."

However, sec. 6 c. of the same citation provides (p. 976):

"Where a statute prescribing a remedy does not create a new right or liability, but merely provides a new remedy for an independent right or liability already existing, the

general rule is that the remedy thus given is not regarded as exclusive but as merely cumulative of other existing remedies, and does not take away a preexisting remedy, or, as more specifically stated, if a statute gives a new remedy in the affirmative, and contains no negative, express or implied, of the old remedy, the new remedy is merely cumulative; and, in such a case, the party having the right may resort to either the preexisting or the new remedy, except that he cannot resort to inconsistent remedies; the right to use cumulative remedies does not obviate the defense of waiver or estoppel."

This court in *Field v. Milwaukee* (1915), 161 Wis. 393, 395, 154 N. W. 698, held:

"Where a statutory remedy is provided for the enforcement of a common-law right without expressly, or by necessary inference, interfering with freedom to resort to the old remedy, the new one is cumulative unless the court, on grounds of public policy, sees fit to make its activity in that field more or less contingent upon the new remedy being exhausted. That is the logic of *State ex rel. Superior v. Duluth St. R. Co., supra.* We are unable to discover any clear legislative attempt to make the statutory remedy in question exclusive."

The attorney's lien statutes do not express a clear legislative purpose to make the lien statutes the exclusive remedy. Therefore, in proper instance, an attorney may bring an action in his own behalf for interference with contractual rights.

The trial court in a scholarly and helpful memorandum opinion concluded that it is not against public policy for a client to settle his claim with the tort-feasor or his insurer without participation and consent of the attorney before action is commenced even though the client has retained counsel. We agree with this portion of the opinion for obvious reasons. The claim belongs to the client and not the attorney; the client has the right to compromise or even abandon his claim if he sees fit to do so. Amicable settle-

ment of claims and disputes is to be encouraged both before or after the commencement of an action in order to minimize expense, both public and private, and for settlement of disputes at an early date.

We do not hold by inference that a contract between client and attorney whereby the attorney is to control the procedure of the prosecution of the claim, nor that an agreement for a lien upon the cause of action for attorney's fees is against public policy and, therefore, void. On the contrary, by virtue of the attorney-lien statutes and the common law we recognize their validity.

Wisconsin has long recognized the right of action for third-party interference with contracts.

In *E. L. Husting Co. v. Coca Cola Co.* (1931), 205 Wis. 356, 365, 237 N. W. 85, 238 N. W. 626, we said:

"It is also well established that one who maliciously induces another to breach a contract with a third person is liable to such third person for the damages resulting from the breach. . . . This doctrine had its inception with the case of *Lumley v. Gye*, 2 Ell. & Bl. 216. The doctrine of that case, which was limited to malicious interference with contracts for personal service, has been followed and extended by numerous other cases. It now extends to contracts other than those involving personal services, and the definition of 'malice' has been broadened to include unjustified interference with the contractual relationship."

The California court in a recent case dealing with interference with an attorney-client contract held:

"An action will lie for the intentional interference by a third person with a contractual relationship either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. . . . There is no valid reason why this rule should not be applied to an attorney's contingent fee contract. Such an agreement is a legal and valid contract entitled to the protection of the law, and an attorney who is wrongfully discharged is generally entitled

to the same amount of compensation as if he had completed the contemplated services." *Herron v. State Farm Mut. Ins. Co.* (1961), 14 Cal. Rptr. 294, 296, 363 Pac. (2d) 310.

The complaint in this action does not, however, allege sufficient facts to show an intentional or malicious interference. The complaint merely alleges that Goldman was retained by the claimant without reference to the terms of the contract, and that Home Mutual was notified of this retainer. The mere notice of retainer was not sufficient to advise Home Mutual of the scope of Goldman's employment or that there was any agreement for control of the action or attorney's fees. Home Mutual had a right to settle the action without liability to Goldman unless they had been sufficiently notified of Goldman's contractual rights with Saunders.

The plaintiff, Goldman, alleges that the conduct of the agent was wilful, wanton, and malicious and demands exemplary or punitive damages. While we do not decide herein the right of an attorney to recover punitive damages for interference in his contractual rights we do question whether an award of punitive damages could be sustained under the allegations of this complaint.

In his order sustaining the demurrer, the trial judge gave the plaintiff leave to amend the complaint within twenty days of the date of the order. We likewise give leave to the plaintiff, on payment of the appeal costs in this court, to serve and file an amended complaint within twenty days of the return of the record to the clerk of the circuit court for Milwaukee county.

*By the Court.*—The order sustaining the demurrer to the complaint is affirmed but modified to allow plaintiff to plead over as stated in the opinion.