(No. 41343.—

ALVIN P. HERMAN *et al.,* Appellees, *vs.* PRUDENCE MUTUAL CASUALTY COMPANY *et al.,* Appellants.

*Opinion filed January 29, 1969.*

Carey, Filter, Murray & White, and Schaller & Reilly, both of Chicago, (James C. Murray and Robert P. Freeman, of counsel,) for appellants.

Donald L. Cohen, of Chicago, (Terence F. Mac-Carthy, of counsel,) for appellees.

Mr. Justice Underwood delivered the opinion of the court:

The circuit court of Cook County dismissed on the

pleadings a complaint by several lawyers and their clients seeking an injunction against and damages from an insurance company and its agents for alleged malicious interference with contractual rights. The plaintiffs appealed directly here, and we transferred (38 Ill.2d 98) to the First District Appellate Court because of the absence of a substantial constitutional question. That court reversed the trial court, holding the complaint sufficient to state a cause of action. (92 Ill. App. 2d 222.) We granted the defendants' petition for leave to appeal.

The action was instituted by attorneys Alvin P. Herman and Theodore Tannebaum (hereinafter "the attorneys"), and Emanuel Acino, Janice Lindsey, Madeline Amato and Tony Paras (hereinafter "the class-plaintiffs"), personal injury clients of the attorneys, on behalf of themselves and 87 other allegedly similarly situated clients of the attorneys, and Alex Cason, another personal injury client of the attorneys. The defendants are Prudence Mutual Casualty Company, George F. Barrett, an attorney who is a director of Prudence and defends suits against it, Urban Service Bureau, Inc., which is employed by Prudence and other insurance companies to adjust and settle claims, and William Warren, an employee of Urban. In the first count of a three-count complaint, the attorneys allege that they have entered into employment retainer contracts with 92 clients who have personal injury or property damage claims against assureds of Prudence; that, subsequent to creation of these contracts, the attorneys sent or caused to be sent to each of the assureds notices of attorneys' liens which were forwarded by the assureds to Prudence; that they have expended time and money in preparation of the claims, have instituted lawsuits in 43 of them, and have attempted to negotiate settlements of the claims with Prudence and Barrett; that Prudence and Barrett, together with Urban and Warren, maliciously, unethically, and illegally conspired to defraud the clients by persuading them to pre-

maturely release their claims without advice of counsel or opportunity of trial; that, in furtherance of the conspiracy, defendants have: "(a) Maliciously and fraudulently attempted to induce, are presently inducing or have induced or otherwise purposely caused HERMAN'S clients to discontinue their business relationships with HERMAN: (b) * * * caused HERMAN'S clients to breach or terminate their respective contracts * * *; (c) Maliciously and fraudulently interfered with HERMAN'S occupation and business expectancies and HERMAN'S clients' claim expectancies; (d) Participated in the unauthorized practice of law * * *; (e) Violated the Canons of Professional Ethics of the Illinois State Bar Association," particularly Canon 9 which prohibits an attorney from communicating directly with or advising a party represented by counsel upon a subject in controversy. In count II, the class-plaintiffs reassert all of the allegations of the first count. In count III, Cason reasserts all the allegations of the first count, and, in addition, claims that Warren maliciously, fraudulently and falsely advised him that Warren's only purpose was to reimburse him for sums of money ($100) not otherwise covered by Cason's insurer for the repair of his automobile; that Warren advised him not to notify his attorney and that he (Warren) would explain, and that Warren did fraudulently explain, the legal relationship and nature of the releases, drafts and documents shown to him; that Warren filled out and completed such releases and drafts and fraudulently obtained from him a release of all claims against Prudence's assured for $100; that he relied on defendant's representations which were false and were wilfully and maliciously made with intent to induce him to act thereon and to deceive and defraud him. Alleging that they have no adequate remedy at law, all plaintiffs asked for a temporary and permanent injunction prohibiting defendants from communicating further with the class-plaintiffs in any way, for actual and

punitive damages, and for certain other relief. Copies of two of the retainer agreements were attached to the complaint; included in them is a clause whereby the clients agreed to pay the attorneys a reasonable fee for services and advice rendered should the clients withdraw their claims or cease asserting them.

Plaintiffs do not now contend that a cause of action accrued to them from the alleged violations of the Canons of Professional Ethics. The plaintiff attorneys do, however, vigorously urge the sufficiency of count I to establish a cause of action against defendants for malicious and fraudulent interference in the business relationships between plaintiff attorneys and their clients. The trial court held all counts of the complaint insufficient, and the appellate court reversed, holding all counts sufficient. We believe the trial court was correct as to the first and second counts, but that the third count adequately states a cause of action in behalf of plaintiff Cason based upon the factual allegations relating to the unauthorized practice of law.

Part of the difficulty in this case seems to stem from what appears to be a belief that all parties plaintiff are entitled to the benefit of all of the allegations of the entire complaint regardless of the fact that each count of the complaint has different plaintiffs and different allegations. Such is not the law. Each count of a complaint is ordinarily a separate statement of claim and its sufficiency is to be determined by its content, including material appearing elsewhere but specifically incorporated therein by reference. *Ross* v. *Chicago & Alton Railroad Co.,* 225 Ill. App. 633; *Kovar* v. *Bremer,* 281 Ill. App. 505, 509; 41 Am. Jur. sec. 108; 71 C.J.S. 225.

The inadequacy of counts I and II lies not in the theory of the action but in the absence of factual allegations supporting that theory. Third party inducement of breaches of contract or unjustifiable interference by third parties in business relationships between attorneys and clients have

been held actionable in numerous cases. (See *Employer's Liability Assur. Corp.* v. *Freeman* (10th cir.), 229 F.2d 547; *State Farm Fire Ins. Co.* v. *Gregory* (4th cir.), 184 F.2d 447; *Hansen* v. *Barrett* (D. Minn.), 183 F. Supp. 831; *Bennett* v. *Sinclair Nav. Co.* (E. D. Pa.), 33 F. Supp. 14; *Luric* v. *New Amsterdam Casualty Co.*, 270 N.Y. 379, 1 N.E.2d 472; *Gordon* v. *Mankoff* (City Ct. of N.Y.), 261 N.Y.S. 888; *Herron* v. *State Farm Mutual Ins. Co.*, 14 Cal. Rptr. 294, 363 P.2d 310; *Fowler* v. *Nationwide Ins. Co.* 256 N.C. 555, 124 S.E.2d 520; *Goldman* v. *Home Mutual Ins. Co.*, 22 Wis.2d 334, 126 N.W.2d 1; *Keels* v. *Powell*, 207 S.C. 97, 34, S.E.2d 482; *Klauder* v. *Cregar*, 327 Pa. 1, 192 Atl. 667; *Bauer* v. *Biel*, 132 Ind. App. 224, 177 N.E.2d 269; *Studdard* v. *Evans*, 108 Ga. App. 819, 135 S.E.2d 60.) And the theory of the action as announced in *Lumley* v. *Gye*, 2 Ell. & Bl. 216, has been repeatedly reaffirmed in this State. (*Doremus* v. *Hennessy*, 176 Ill. 608; *London Guarantee and Accident Co.* v. *Horn*, 206 Ill. 493; *Carpenters' Union* v. *Citizens Committee*, 333 Ill. 225.) It is stated in section 766 of the Restatement of the Law of Torts as follows: "Except as stated in Section 698 [which is not here relevant], one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

    (a)  perform a contract with another, or

    (b)  enter into or continue a business relation with another

    is liable to the other for the harm caused thereby."

Part (b) of the ensuing comments would lend support to plaintiffs' argument that there is a general duty not to purposely interfere with another's contractual expectancies from third persons. It also, however, is there indicated that a privilege to interfere, even in contractual relationships, may exist dependent upon the methods used (b), interest of the interferer (c), purpose (d), ill will (m), and other factors more specifically dealt with in section 767 and ensuing sections. The controversy here as to the propriety of

an insurer instituting negotiations directly with claimants known by the insurer to be represented by counsel would necessitate consideration of the extent of an insurer's privilege, if any, in this respect, were the complaint sufficient to state a cause of action apart from the question of privilege. (*E.g., Herron* v. *State Farm Mutual Insurance Company,* 14 Cal. Rptr. 294, 363 P.2d 310; but see *Krause* v. *Hartford Accident & Indemnity Co.,* 331 Mich. 19, 49 N.W. 2d 41.) We believe, however, that it is not.

In their brief, plaintiffs assert that "The gravamen of the complaint * * * is best summarized * * * in Section 766 of the Restatement" and that "Particularly descriptive of the claim of the complaint is the 'second situation' described in Comment (c) to section 766: 'The second situation is that in which B and C are already in a business relationship which is terminable at B's will and A induces or otherwise purposely causes B to *terminate* the relationship * * *'." (Our emphasis.) While we have not heretofore had occasion to consider the propriety of an action for malicious interference with contractual rights when brought in relation to an attorney-client contract, factual allegations or evidence of breach or termination of the contract and resulting damage, which are totally absent here, were generally present in those cases in which courts sustained such actions for damages brought in connection with other types of contracts. (See *London Guarantee and Accident Co.* v. *Horn,* 206 Ill. 493; *Doremus* v. *Hennessy,* 176 Ill. 608; *Northern Insurance Co. of New York* v. *Doctor,* 23 Ill. App. 2d 225.) Moreover, in none of the cases cited by plaintiffs, wherein actions for malicious interference with a contract for employment of an attorney have been successfully maintained outside of this State, have the allegations been limited as here. In each of the relevant cases, including those above cited, wherein recovery has been allowed or a complaint held sufficient, it was either alleged or shown that the client was induced by or

conspired with the defendant to breach or terminate his contract with an attorney, thus depriving the attorney of compensation. In the majority of the cited cases the culpable conduct of the defendants has been more aggravated than that alleged in counts I and II, and we believe it a fair statement to say that in all of those cases the damage or added burden to plaintiffs resulting from the alleged misconduct was substantially greater than is here charged.

While count I alleges defendants "Maliciously and fraudulently attempted to induce, are presently inducing or have induced or otherwise purposely caused HERMAN'S clients to discontinue their business relationships with HERMAN: (b) * * * to breach or terminate their respective contracts * * *; (c) Maliciously and fraudulently interfered with HERMAN'S occupation and business expectancies and HERMAN'S clients' claim expectancies;" these allegations are pure conclusions devoid of factual support as to any contract breach or termination; no client is identified as having breached or terminated his contract with the attorneys, nor are there any facts alleged which constitute such breach or termination. The appellate court, indicating there exists no clear distinction between statements of "evidentiary facts", "ultimate facts" and "conclusions of law", held the conclusionary allegations of count I sufficient and also found that count I alleged "at least one breach" of contract (which was not further identified). While we agree there are instances where the line of demarcation is not easily drawn between permissible factual statements and impermissible conclusions, this clearly is not such an instance. (*Gouker* v. *Winnebago County Board of Supervisors,* 37 Ill.2d 473; *Belmar Drive-In Theatre Co.* v. *Illinois State Toll Highway Com.,* 34 Ill.2d 544, 549.) The only instance in which there is a factually sufficient allegation that defendants actually succeeded in securing a release of a client's claim is in count III, which relates only to the cause of action of Alex Cason and is treated sep-

arately hereafter; but even as to Cason there is no allegation of a contract violation or termination nor are the attorneys joined as plaintiffs in that count. As to each of the other clients, the most that can be said of the charge is that defendants conspired to induce them to breach or terminate their business relationships, and, in furtherance of the conspiracy, have attempted to do so. Thus, accepting the nonconclusionary allegations as true, the sole question posed as to the charges that defendants are guilty of malicious interference with the contracts between the attorneys and the clients other than Cason is whether the fact that an insurance company, by its employees and agents, attempts to settle directly with a person who is represented by counsel and has a claim against its assured is guilty of malicious interference with the contract between the attorney and his client and may be held liable for damages and enjoined against further activity of like nature even though there has been no termination or breach of the attorney-client contract.

As earlier indicated, plaintiffs cite no case which has extended the malicious-interference-with-contract rule as far as we must take it if we are to uphold this cause of action under the limited factual allegations of count I. There are factors which favor such extension, among them the desirability of protecting injured plaintiffs from the fraudulent misrepresentations of those who would by-pass retained counsel and attempt to deal directly with the client; and an individual's right, be he lawyer or layman, to protection of his contractual rights and business expectancies from the malicious interference of others. There are also factors militating against extension, including the absolute right of a client to settle his claim without his lawyer's consent; and the desirability, in this day of backlogged courts and increasing litigation, of encouraging fairly made out-of-court settlements. While we agree that the presence of the missing contractual breach would support a cause of ac-

tion on behalf of the attorneys here, we are persuaded that count I, containing only conclusionary allegations and devoid of any facts whatsoever showing such breach, is insufficient. (We are at a loss as to what allegation was considered by the appellate court to constitute "at least one breach" of contract. If it was the execution of a release by Cason, it must be remembered that this allegation appears only in count III to which the attorneys are not parties; and, in any event, settlement of Cason's claim could not be a breach of his contract with the attorneys because Cason expressly agreed to pay counsel for their services on a *quantum meruit* basis if he withdrew his claim, and it is not alleged at any point that he has failed to make such payment; nor, if the release was fraudulently obtained as alleged, has the claim been finally settled.) We therefore hold that, in the absence of factual allegations that the employment contracts were breached or terminated with resulting damage to plaintiffs, the complaint fails to state a cause of action for damages for malicious interference with contract. (*London Guarantee; Doremus;* see also *Gouker, Belmar.*) Since count II is almost entirely a reassertion by the class-plaintiffs of the allegations of count I, it, too, is likewise deficient.

The assertion in counts I and II that defendants have participated in the unauthorized practice of law is unsupported by *any* allegations of fact, and the conclusions there alleged are insufficient to state a cause of action for damages. (*Gouker; Belmar.*) Nor do we believe these counts sufficient to state a cause of action justifying the equitable relief sought by plaintiffs. In addition to the inadequacy of their allegations the "harassment" by defendants of which plaintiffs complain seems substantially less than that ordinarily required to warrant action by a court of equity. Other than as to count III relating to Cason, the facts alleged are only that defendants have "contacted" the clients, and there appears nothing inherent in such conduct to neces-

sitate use of the extraordinary remedy of injunction. *Barco Manufacturing Co.* v. *Wright*, 10 Ill.2d 157, 166.

We come now to count III. It, as heretofore indicated, attempts to set forth a cause of action on behalf of Alex Cason, the client from whom defendants did secure by allegedly fraudulent means a total release of Cason's claim against Prudence's assured. The allegations of this count are substantially more factual in nature, but still inadequate to sustain an action for malicious interference with contractual rights since, as mentioned above, even here there are no facts alleged establishing either a breach or termination of the retainer contract with plaintiff-attorneys. It is conceded that a party who is represented by counsel may discharge his attorney or negotiate a settlement in his own behalf, subject to such restrictive covenants in the retainer contract as may be valid. (See *Sutton* v. *Chicago Railways Co.*, 258 Ill. 551; *Standidge* v. *Chicago Railways Co.*, 254 Ill. 524.) Consequently, even were plaintiff-attorneys parties to this count and thus benefitted by its allegations, Cason has not breached his contract by settling his claim unless he has also failed to comply with his agreement to pay the attorneys on a *quantum meruit* basis in the event he withdrew. There is no allegation that such is the fact. Nor is there any hint that the attorneys have failed to perform their contract with Cason or are unwilling to do so, upon which Cason might predicate a cause of action on the malicious interference theory.

The question thus becomes one as to whether count III sufficiently alleges the unauthorized practice of law by the layman, Warren, to sustain a cause of action on that theory. Under the circumstances alleged to prevail here, we believe that it does. It is alleged that Warren advised Cason that he should not consult or advise the attorney then representing Cason; that Warren stated he would explain, and that Warren did fraudulently explain, the legal relationship and the nature, extent and consequences of the release, draft and

documents shown by him to Cason; that in reliance thereon Cason signed the proffered releases allegedly represented as reimbursement to Cason for automobile repair costs not covered by Cason's insurer (apparently a $100 deductible loss clause); and that such releases were in fact complete releases of Prudence and its assured from all liability. Irrespective of whether a less comprehensive course of conduct would create a similar cause of action, the conduct here alleged includes acts which "by their nature * * * require a lawyer's training for their proper performance * * *." (*Chicago Bar Association* v. *Quinlan and Tyson, Inc.,* 34 Ill.2d 116, 120.) Count III incorporates count I and is sufficient to charge Prudence, Barrett and Urban Services with responsibility for the conduct of Warren, and any relief granted Cason could accordingly run against all of the named defendants.

If, as Cason alleges, he has been fraudulently induced to release his claim, this release will be no bar to future settlement negotiations or the maintenance of a lawsuit on his original claim (*Woodbury* v. *United States Casualty Co.,* 284 Ill. 227; 31 Ill. Law & Practice, 342-3), and he is entitled to be protected from further alleged harassment by laymen engaged in the unauthorized practice of law.

The State requires minimum levels of education, training and character before granting a license to practice law. Its purpose in doing so is the protection of the public, and the practice of law by those not so licensed is accordingly prohibited. (Ill. Rev. Stat. 1965, ch. 13, par. 1.) The hazard to the public resulting from the practice of law by the unlicensed is evident from the allegations here if the facts are as charged. Where necessary to further the legislative purpose of protection of the public we have enjoined the unauthorized practice of law (*e.g., Chicago Bar Association* v. *Quinlan and Tyson, Inc.,* 34 Ill.2d 116) not primarily for the protection of attorneys generally, but rather for the protection of the public from potential injury resulting

from reliance upon laymen for the performance of acts requiring the training, knowledge, and responsibility of a licensed attorney.

We accordingly hold that plaintiff Cason has stated a cause of action in count III and proof of its allegations will justify injunctive relief. The motion to dismiss, insofar as it relates to count III, must be denied.

Cason also asks that defendants be enjoined from asserting the allegedly fraudulently obtained release as a defense in any lawsuit brought by him upon the claim. As pointed out above, a release so obtained is no bar to the prosecution of the claim, and its validity could be determined in that litigation. However, if in connection with proof of the related issues here, plaintiff Cason does in fact prove that the release was the product of fraudulent misrepresentations, there would appear no good reason that he be required to do so again at a later date; judge, lawyer and witness time and expense will be conserved in such instance if future use of the release is enjoined. Likewise, such damages as may be proved by plaintiff to have resulted from defendants' wrongful conduct may be assessed.

Plaintiff Cason also seeks punitive damages. In our opinion, however, the conduct alleged here is not characterized by the type of wantonness, malice, oppression, or circumstances of aggravation necessary for the award of punitive damages. *Knierim* v. *Izzo*, 22 Ill.2d 73, 87.

The judgment of the Appellate Court is accordingly reversed as to counts I and II and affirmed as to count III. The cause is remanded to the circuit court of Cook County for further proceedings in accordance herewith.

*Affirmed in part and reversed in part
and remanded, with directions.*