No. 2--07--1081          Filed: 10-8-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF PAUL A. BARILE, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 03--D--565 |
| CARLA BARILE, | ) ) ) | Honorable James J. Konetski, |
| Respondent-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

The marriage of petitioner, Paul A. Barile, and respondent, Carla Barile, was dissolved on November 16, 2004. In the dissolution judgment, the court ordered petitioner to pay respondent maintenance of $5,318 a month. The court then indicated that the amount of maintenance was nonmodifiable. On September 1, 2006, petitioner petitioned to terminate, modify, or abate maintenance. 750 ILCS 5/510(a) (West 2006). Respondent moved to dismiss petitioner's petition (see 735 ILCS 5/2--619(a)(9) (West 2006)) and petitioned to hold petitioner in contempt for failing to pay maintenance as of September 2006. The trial court granted the motion to dismiss. Following a hearing on respondent's petition, the court, which was not the same court that presided over the dissolution proceedings, declined to hold petitioner in contempt. However, the court ordered petitioner to pay respondent $69,134 in past-due maintenance and imposed interest of 9% on the arrearage, which interest was to run from the date the court entered judgment on the arrearage.

Respondent appeals, contending that the court erred when it (1) found that petitioner should not be held in contempt and (2) gave her interest on the maintenance arrearage only from September 26, 2007, the date of judgment, and not from September 2006, when petitioner stopped paying maintenance. We reverse and remand.

The November 16, 2004, dissolution order awarded "[respondent] *** four years reviewable maintenance from [petitioner] in the amount of *** $5,318 *** per month." During that four-year period, petitioner's maintenance obligation was "non-modifiable in amount." The amount was based on petitioner's average gross annual income of $158,000. The dissolution order reserved the issue of whether respondent was required to pay petitioner child support, providing that petitioner shall support the parties' two children and "shall pay and be responsible for all of the out of pocket uncovered medical and extracurricular expenses of the minor children." Nowhere in the order was petitioner required to pay for the college education of the parties' children.

At the hearing on respondent's contempt petition, respondent testified that the last maintenance payment she received from petitioner was in August 2006. Thus, petitioner's maintenance arrearage totaled $69,134.[1] Respondent worked 20 hours per week and earned $9.55 per hour. Respondent testified that her hours would soon increase to 40 hours per week. Although respondent worked to support herself, she had to borrow money to make ends meet. Respondent testified that petitioner paid her her share of the equity in the marital home, in which petitioner now resided. While petitioner owned his own home, respondent was currently renting her home.

---

[1]This was the amount of the arrearage as of September 26, 2007, when the trial court ruled on the contempt petition.

Based on respondent's testimony, the trial court found that a rule to show cause should issue and that the burden of proof shifted to petitioner to establish that his failure to pay maintenance was not willful.

Petitioner conceded that he stopped making maintenance payments to respondent on September 1, 2006. In 2006, petitioner's gross income was $164,000. That gross income included $74,000 that petitioner received from Grubb & Ellis, a previous employer. On cross-examination, petitioner testified that he received a total of $235,000 from two employers in 2006 and got $300 per month from the Veteran's Administration. In January 2007, petitioner started new employment, earning $8,332 per month within the first six months and receiving $1,500 when the company for which he worked was sold. Also in 2007, petitioner obtained a $21,347 tax refund.

In addition to presenting evidence about his income, petitioner also testified about his expenses. In January 2005, petitioner received a loan of $50,000 from a previous employer, and he was given $100,000 in draws, which are like loans. Although petitioner earned $60,000 within the first six months of 2007, he received a loan of $4,166.66 per month for the remainder of the year. Petitioner used the $50,000 loan and the $74,000 he was paid to pay back certain outstanding debts, such as health insurance costs and a $61,000 loan he received from his mother. After the parties' marriage was dissolved, petitioner owed his attorney $220,000, and he owed almost $565,000 on the marital home, which he bought in 2004 for $610,000. Petitioner believed that the mortgage on the home would be foreclosed.

Petitioner estimated that his living expenses exceeded $12,000 per month. In fact, petitioner testified that his living expenses in October 2006 totaled $15,000, which did not include any maintenance petitioner should have paid respondent. Petitioner's living expenses included many of

the parties' children's expenses, which the dissolution order required him to pay. Specifically, petitioner's living expenses included the college tuition of the parties' daughter, Erica; health insurance; his mortgage; real estate taxes; car payments for himself, which totaled $598 per month; car payments for Erica; automobile insurance for himself; automobile insurance for Erica, which totaled $343 per month; cell phones for the parties' children; utilities; blood pressure medication; clothing for the parties' children; work expenses, including parking costs of $400 per month and gas; a three-day trip to California in the summer of 2006; golfing with the parties' son, Blake, almost every weekend; and food for himself and Blake.

During various parts of the proceedings on the contempt petition, the trial court interjected several concerns it had with the maintenance provision of the parties' dissolution order. Specifically, the court seriously questioned whether Illinois law permitted a court to enter an order for maintenance that provided that the amount of maintenance was nonmodifiable. Because of this concern, the court asked the parties to present arguments on whether, because of the unauthorized order, the court had jurisdiction over the case. The court finally determined that the maintenance provision in the dissolution order was voidable, not void, and, thus, the court had jurisdiction over the case.

When the cause continued, petitioner stated that he had filed the petition to abate, terminate, or modify maintenance based on the fact that the maintenance provision in the dissolution order was void. The court advised petitioner that it had found that the order was voidable. Petitioner's petition to modify maintenance was dismissed, as the dissolution order provided that maintenance was nonmodifiable.

Petitioner then testified on cross-examination that he quit Grubb & Ellis in December 2005, after having worked there for six years. Petitioner quit because his insurance was eliminated. When petitioner left, he owed his employer $6,300 in unpaid health insurance expenses, which was ultimately taken out of his pay. Also in 2005, petitioner lent $10,000 to a friend, which had never been repaid. Petitioner testified that he had tried to collect payment on the loan, but his friend had not been able to repay the debt.

When asked about the money he spent on the parties' children, petitioner testified that Erica went to the College of Du Page (COD) until 2005. At that time, she transferred to a community college in California. She decided to go to school in California because she wanted to get away from the bad influence of some of her friends here. Although tuition in California was initially higher than at COD, petitioner now paid less than he would have paid for her to go to COD.

In addition to paying Erica's college tuition, petitioner paid $1,200 of Erica's $1,700 rent, and he gave Erica spending money. In fact, during some parts of 2006, he gave Erica spending money totaling $1,000 per month. Further, petitioner paid Erica's dogs' veterinary bills, and, on one occasion, he paid for the dogs to be boarded. Petitioner also sent Blake to California for two months to visit Erica, and he paid for Erica to fly to Illinois at Christmas time. Although petitioner submitted several documents detailing his assets and liabilities, the documents did not itemize petitioner's expenses beyond, for example, general household expenses, business costs, and college expenses for Erica.

The trial court found that petitioner was not in contempt. In so doing, the court noted that it was clear that petitioner did not comply with the dissolution order and that petitioner should have spent the money he used to play golf and take care of Erica's dogs to satisfy his maintenance

obligation. Nevertheless, the court believed that the degree to which petitioner spent money on things other than maintenance was not "contemptuous."

Further, the court noted that petitioner's "motivation" was not to "stiff" respondent. Rather, the court believed that petitioner just did not have the money with which to pay respondent. The court considered that petitioner filed a petition to modify maintenance, that petitioner spent money on the parties' children and not on frivolous things for himself, and that, when the previous judge entered the dissolution order, he recognized that it was going to be difficult for petitioner to satisfy his maintenance obligation. The court then entered a judgment of $69,134 in respondent's favor and ordered that interest on the arrearage was to run at 9% from that day forward. This timely appeal followed.

Respondent raises two issues on appeal. Specifically, she claims that (1) the trial court erred when it refused to find petitioner in contempt; and (2) interest on the maintenance arrearage should run from September 2006, when petitioner stopped paying maintenance. Before considering those issues, we first address respondent's motion to strike petitioner's brief.

In respondent's motion to strike petitioner's brief, she observes that petitioner's brief is lacking in many respects.[2] For example, and most glaringly, petitioner fails to cite to the record and does not cite any authority in support of his arguments (210 Ill. 2d Rs. 341(h)(7), (i)). Though a pro

---

[2]In the motion to strike, respondent takes issue with petitioner's "Response to Brief filed by Barbara A. Preiner, Attorney for Appellant" and a document entitled "Response to Appeal," which petitioner allegedly filed with this court on December 26, 2007. Although we have the "Response to Brief," nothing in our records shows that a "Response to Appeal" was ever filed. Thus, for purposes of the motion to strike, we limit our consideration to the "Response to Brief."

se litigant, petitioner is not excused from following the rules that dictate the form and content of appellate briefs. Steinbrecher v. Steinbrecher, 197 Ill. 2d 514, 528 (2001). Although petitioner's brief is clearly deficient and we certainly could strike his brief for his failure to comply with the rules (see Eickmeyer v. Blietz Organization, Inc., 284 Ill. App. 3d 134, 138 (1996)), we choose not to do so, as we understand the issues raised and we have the benefit of respondent's cogent brief (Twardowski v. Holiday Hospitality Franchising, Inc., 321 Ill. App. 3d 509, 511 (2001)). We admonish petitioner to comply with the rules governing appellate briefs should he file a brief with this court in the future.

Turning to the merits, we first consider whether the trial court erred when it refused to find petitioner in contempt of court for failing to pay his maintenance obligation. Petitioner argues that he could not be found in contempt because (1) the part of the dissolution order that provided that maintenance was nonmodifiable was unauthorized, and, thus, petitioner's failure to pay respondent maintenance was justified; and (2) he could not afford to pay respondent maintenance once he paid his own expenses and those of the parties' two children.

Although it is true that the trial court should not have ordered that the amount of maintenance was nonmodifiable (750 ILCS 5/510 (West 2006)), such an order merely made that provision of the dissolution order voidable, not void (see In re Marriage of David, 367 Ill. App. 3d 908, 916-17 (2006)). That said, the issue then becomes whether petitioner can be held in contempt for violating a voidable order. As this presents a question of law, our review is de novo. In re Marriage of Thompson, 357 Ill. App. 3d 854, 857 (2005).

In In re Marriage of Steinberg, 302 Ill. App. 3d 845, 849 (1998), the husband was required to pay the wife child support. The child support agreement expressed the husband's support

obligation as a percentage of his income, which is not authorized. Steinberg, 302 Ill. App. 3d at 852. The husband stopped paying child support, and the wife petitioned to hold the husband in contempt. The trial court granted the petition, and the husband appealed. Steinberg, 302 Ill. App. 3d at 851-52. On appeal, the appellate court rejected the husband's claim that he was justified in not paying the wife child support because the order for child support was voidable. Steinberg, 302 Ill. App. 3d at 853. Because the order for child support was voidable, not void, the husband, in order to avoid being found in contempt of court, had to present evidence that he tried to satisfy his child support obligation. Steinberg, 302 Ill. App. 3d at 853; cf. Horzely v. Horzely, 71 Ill. App. 3d 542, 546 (1979) ("one is justified in refusing to comply with a void order and contempt will not lie for violation of a void order"). The husband failed to present any evidence that he tried to comply with the order, and, thus, the trial court did not err when it found the husband in contempt. Steinberg, 302 Ill. App. 3d at 854.

Here, as in Steinberg, the trial court, as noted, should not have ordered that the amount of maintenance was nonmodifiable. However, the fact that the trial court overlooked or misapplied the law in so providing did not mean that petitioner, without subjecting himself to a contempt petition, could disobey the order and stop paying respondent maintenance.

Having concluded that petitioner could be held in contempt for violating a voidable order, we next consider whether the trial court erred when it found that petitioner should not be held in contempt for failing to pay respondent maintenance. "The power to enforce an order to pay money through contempt is limited to cases of wilful refusal to obey the court's order." In re Marriage of Logston, 103 Ill. 2d 266, 285 (1984). The failure to make support payments as ordered is prima facie evidence of contempt. In re Marriage of Sharp, 369 Ill. App. 3d 271, 279 (2006). Once the party

bringing the contempt petition establishes a prima facie case, the burden shifts to the alleged contemnor to prove that the failure to make support payments was not willful or contumacious and that there exists a valid excuse for his failure to pay. Sharp, 369 Ill. App. 3d at 279. "[W]hether a party is guilty of contempt is a question of fact for the trial court, and *** a reviewing court will not disturb the finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." Logston, 103 Ill. 2d at 286-87.[3]

Here, regardless of whether the trial court abused its discretion, we determine that its finding that petitioner was not in contempt was against the manifest weight of the evidence. At the hearing on the petition, the evidence revealed that, in November 2004, petitioner was ordered to pay respondent maintenance of $5,318 per month. In September 2006, petitioner stopped paying

---

[3]To varying degrees, the appellate court has invoked the Logston standard (e.g., In re Marriage of Deike, 381 Ill. App. 3d 620, 633 (2008)), invoked only the manifest-weight standard (e.g., In re Marriage of Kneitz, 341 Ill. App. 3d 299, 303 (2003)), and invoked only the abuse-of-discretion standard (e.g., Sharp, 369 Ill. App. 3d at 279). For its part, the supreme court has never expressly abandoned the Logston standard in the context of reviewing orders on contempt petitions. However, in other contexts, the court has recently cautioned against the application of the abuse-of-discretion standard to findings of fact. See Best v. Best, 223 Ill. 2d 342, 348-50 (2006) (rejecting long-held belief that abuse-of-discretion standard applies to factual finding of abuse under Domestic Violence Act); see also People v. Vincent, 226 Ill. 2d 1, 17 n.5 (2007) ("[t]he abuse of discretion standard is not tied to any quantum of proof"). Nevertheless, as we are reviewing the ruling on a contempt petition and the supreme court has not specifically altered the standard of review in this context, we will adhere to the Logston standard.

maintenance, and, as of September 2007, petitioner's outstanding support obligation totaled $69,134. This evidence was sufficient to meet respondent's burden of establishing a prima facie case of contempt. Sharp, 369 Ill. App. 3d at 280.

The evidence petitioner presented failed to rebut respondent's proof. Petitioner's support obligation of $5,318 per month was based on petitioner's average gross annual income of $158,000. When petitioner stopped paying respondent maintenance, he was earning quite a bit more than this. Indeed, the evidence revealed that he earned more than $235,000 in 2006. Although petitioner had other expenses and he used a portion of his income to support the parties' two children, which the dissolution order required him to do, the order also provided that his obligation to support his children lasted only until they reached majority. Thus, petitioner was not required to pay for Erica's college tuition, rent, or veterinary bills, and he certainly did not need to give Erica spending money totaling $1,000 per month, pay off her car loan, and pay for her car insurance. "[T]he defense of poverty and misfortune as a valid excuse for nonpayment has been found applicable only in the most extreme cases, notably where a [party who is ordered to pay support] had no money and no way of getting money to meet his support obligations." In re Marriage of Dall, 212 Ill. App. 3d 85, 97-98 (1991). Moreover, a party's "financial inability to comply with an order must be shown by definite and explicit evidence." Dall, 212 Ill. App. 3d at 98. Here, petitioner failed to meet that threshold. Petitioner's choice to cover his own expenses and many nonessential expenses that the parties' children incurred does not absolve him of his maintenance obligation.

The last issue we address is whether respondent was entitled to interest on the maintenance arrearage from September 2006, when petitioner stopped paying maintenance, or from September 2007, when the trial court entered judgment on the arrearage. Resolving this issue requires us to

interpret various sections of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 et seq. (West 2006)) and the Code of Civil Procedure (Code) (735 ILCS 5/1--101 et seq. (West 2006)).

In interpreting a statute, we adhere to the well-settled principles of statutory construction. In re Marriage of Lindman, 356 Ill. App. 3d 462, 465 (2005). Our primary objective is to determine and give effect to the intent of the legislature, the best indicator of which is the plain language of the statute. In re Marriage of Rogers, 213 Ill. 2d 129, 136 (2004). When the language used in the statute is clear and unambiguous, we must give the statute effect as written. In re Marriage of Gray, 314 Ill. App. 3d 249, 252 (2000). Because interpreting a statute presents a question of law, our review is de novo. Rogers, 213 Ill. 2d at 135-36.

Section 504 of the Marriage Act (750 ILCS 5/504 (West 2006)) governs the award of maintenance. Subsection (b--5) provides:

"Any maintenance obligation including any unallocated maintenance and child support obligation, or any portion of any support obligation, that becomes due and remains unpaid shall accrue simple interest as set forth in Section 505 of this Act." 750 ILCS 5/504(b--5) (West 2006).

Section 505 of the Marriage Act (750 ILCS 5/505 (West 2006)), to which section 504(b--5) directs us, addresses child support, the action a party may take if child support is not paid, and the penalties that may be imposed when a child support order is not satisfied. Subsection (b) provides:

"A support obligation, or any portion of a support obligation, which becomes due and remains unpaid as of the end of each month, excluding the child support that was due for that month to the extent that it was not paid in that month, shall accrue simple interest as set forth

in Section 12--109 of the Code *** [(735 ILCS 5/12--109 (West 2006))]." 750 ILCS 5/505(b) (West 2006).

Section 12--109 of the Code, to which section 505(b) of the Marriage Act refers, delineates how interest on child support shall be calculated. Subsection (a) indicates:

"Every judgment except those arising by operation of law from child support orders shall bear interest thereon as provided in Section 2--1303 [of the Code (735 ILCS 5/2--1303 (West 2006))]." (Emphasis added.) 735 ILCS 5/12--109(a) (West 2006).

Subsection (b) then provides:

"Every judgment arising by operation of law from a child support order shall bear interest as provided in this subsection. The interest on judgments arising by operation of law from child support orders shall be calculated by applying one-twelfth of the current statutory interest rate as provided in Section 2--1303 to the unpaid child support balance as of the end of each calendar month. The unpaid child support balance at the end of the month is the total amount of child support ordered, excluding the child support that was due for that month to the extent that it was not paid in that month and including judgments from retroactive child support, less all payments received and applied as set forth in this subsection. The accrued interest shall not be included in the unpaid child support balance when calculating interest at the end of the month." 735 ILCS 5/12--109(b) (West 2006).

The remainder of section 12--109(b) of the Code provides a formula by which courts can calculate the interest on unpaid child support obligations.

Section 2--1303 of the Code, to which section 12--109(a) and section 12--109(b) of the Code refer, addresses how a court should calculate interest on judgments. That section specifies, in relevant part:

"Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ***." (Emphasis added.) 735 ILCS 5/2--1303 (West 2006).

Under the plain language of these statutes, it is clear that the Marriage Act directs us to treat maintenance and child support similarly in calculating interest on unpaid support obligations. Section 504(b--5) of the Marriage Act states that maintenance "shall accrue simple interest as set forth in Section 505," which pertains to child support. 750 ILCS 5/504(b--5) (West 2006). In turn, section 505 states that child support "shall accrue simple interest as set forth in Section 12--109 of the Code." 750 ILCS 5/505(b) (West 2006). Thus, section 504(b--5) effectively states that maintenance, like child support, "shall accrue simple interest as set forth" in section 12--109(b). 750 ILCS 5/504(b--5) (West 2006). Because section 12--109(b) dictates that interest on child support accrues if support is not paid at the end of the month when due, section 504(b--5), by incorporating section 12--109, dictates that interest on maintenance accrues the same way. See also D. Yavitz, Interest on Past-Due Maintenance and Child Support: the New Calculus, 94 Ill. B.J. 76, 93 (2006).

While section 505 of the Marriage Act directs us to section 12--109 of the Code without specifying subsection (a) or (b), it appears clear we are directed to subsection (b), because subsection (b) provides for the method of calculating interest on child support, hence on maintenance. However, to the extent the legislature may have left this ambiguous, we engage in the following analysis.

Section 12--109(a), read in isolation, would appear to suggest that interest on maintenance accrues as of the date of judgment, because the exception in (a) is for child support. Thus, presumably, interest on anything else, including maintenance, is subject to section 2--1303 of the Code, setting up a potential conflict between section 12--109(a) and the relevant portions of the Marriage Act.

This potential conflict does not persuade us to conclude that interest on maintenance is not calculated pursuant to section 12--109(b). Section 12--109(a) cannot be read in isolation, but, rather, we must consider it with reference to section 504(b--5). See Henrich v. Libertyville High School, 186 Ill. 2d 381, 392 (1998) ("statutes relating to the same subject must be compared and so construed with reference to each other that effect may be given to all of the provisions of each, if it can fairly and reasonably be done"). Once section 12--109(a) and section 504(b--5) are read together, the statutes are harmonious. Section 12--109(a) excepts child support, and section 504(b--5) provides that maintenance is to be treated like child support for the specific purpose of calculating interest, so that we calculate interest on maintenance in accordance with section 12--109(b). It would be illogical to conclude that, because of section 12--109(a), maintenance should not accrue interest in the same manner as child support, when the Marriage Act contains explicit language to the contrary.

Moreover, even were we to view sections 12--109(a) and 504(b--5) as conflicting, the conflict would not alter our result, because, "[w]here a general statutory provision and a more specific statutory provision relate to the same subject, we will presume that the legislature intended the more specific provision to govern." Moore v. Green, 219 Ill. 2d 470, 480 (2006). Section 504(b--5), again by incorporating section 12--109, specifically subjects maintenance to section 12--109(b). Section 12--109(a), by contrast, excludes maintenance from section 12--109(b), but only

by generally excluding everything but child support. Accordingly, we hold that interest on maintenance, like interest on child support, is calculated per section 12--109(b).

In sum, we reverse the trial court's finding that petitioner was not in contempt and its award on the maintenance arrearage. We remand the cause for the imposition of a contempt sanction and for the calculation of interest on the arrearage per section 12--109(b) of the Code.

The orders of the circuit court of Du Page County are reversed, and the cause is remanded.

Reversed and remanded.

McLAREN and GROMETER, JJ., concur.