# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of Patel*, 2013 IL App (1st) 122882

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF SONAL PATEL, Petitioner-Appellee and VIPUL PATEL, Respondent-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-2882 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | September 6, 2013<br><br>October 9, 2013<br>October 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order requiring respondent to pay interim attorney fees of $69,000 to petitioner's attorney was upheld over respondent's contentions that petitioner only requested $51,040 and she failed to show she was unable to pay the fees and that respondent could pay, since the record on appeal was insufficient to allow consideration of respondent's objections. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-D-00904; the Hon. Dominique C. Ross, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Paul J. Bargiel, P.C., of Chicago (Paul J. Bargiel, of counsel), for appellant.

Beerman Pritikin Mirabelli Swerdlove LLP, of Chicago (Enrico J. Mirabelli and Amy L. Jonaitis, of counsel), for appellee.

Panel

JUSTICE PALMER delivered the judgment of the court, with opinion.

Justices McBride and Howse concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner Sonal Patel and respondent Vipul Patel are engaged in dissolution of marriage proceedings in the circuit court of Cook County. Respondent appeals from an order of the circuit court ordering him to pay petitioner's interim attorney fees and from the court's subsequent order finding him in indirect civil contempt and imposing sanctions for his failure to comply with the order to pay the attorney fees. Respondent argues that the court (1) abused its discretion in awarding interim fees to petitioner because the record fails to demonstrate that respondent had the ability to pay petitioner's fees and petitioner was unable to do so; and (2) lacked jurisdiction to award petitioner $69,000 in interim fees when her petition requested only $51,040 in interim fees. He requests that we reverse the order awarding interim attorney fees and the court's orders finding him in contempt and imposing sanctions for his failure to comply with that underlying order. We affirm.

¶ 2                                    BACKGROUND

¶ 3    The parties married in November 1999 and two children were born to the marriage. On January 28, 2010, petitioner filed a petition for dissolution of marriage. On April 13, 2010, respondent filed a counterpetition for dissolution of marriage. On October 12, 2010, petitioner filed a petition for interim attorney fees and costs (first petition) pursuant to sections 508 and 501(c-1) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/508, 501(c-1) (West 2010)).

¶ 4    Pursuant to section 508 of the Act, "[i]nterim attorney's fees and costs may be awarded from the opposing party, in a pre-judgment dissolution proceeding in accordance with subsection (c-1) of Section 501." 750 ILCS 5/508 (West 2010). Section 501(c-1) provides that the trial court may assess attorney fees and costs in favor of the petitioning party's counsel while the case is still pending. 750 ILCS 5/501(c-1) (West 2010). "Except for good cause shown, a proceeding for (or relating to) interim attorney's fees and costs in a pre-judgment dissolution proceeding shall be nonevidentiary and summary in nature." 750 ILCS 5/501(c-1)(1) (West 2010). Section 501(c-1)(3) provides that the court

"shall assess an interim award against an opposing party in an amount necessary to enable the petitioning party to participate adequately in the litigation, upon findings that

-2-

the party from whom attorney's fees and costs are sought has the financial ability to pay reasonable amounts and that the party seeking attorney's fees and costs lacks sufficient access to assets or income to pay reasonable amounts." 750 ILCS 5/501(c-1)(3) (West 2010).

¶ 5 Petitioner asserted that her financial resources were insufficient to pay the attorney fees and costs necessary to be adequately represented in the matter. She claimed that she had paid her attorneys $7,400 but owed them in excess of $4,000. She asserted that respondent had access to substantial funds, was possessed of substantial assets and received financial assistance from his extended family. Petitioner also asserted that respondent had control of $40,000 of marital funds in a checking account, $400,000 in a nonmarital Ameritrade account and in excess of $300,000 in a nonmarital Ameritrade Roth account. She claimed that she was without adequate funds with which to pay attorney fees and costs and requested the court to award her interim attorney fees.

¶ 6 In support of her petition, petitioner attached her signed and notarized affidavit in which she stated that she "lack[ed] sufficient income to pay reasonable attorneys' fees and costs" and respondent was "a high net worth individual who [was] more than capable of paying for" her attorney fees and costs. She also attached her attorney's affidavit, in which he stated that petitioner owed in excess of $4,000 to his law firm and that, based on the complexity of the case, he anticipated that substantial additional time would be spent on the matter.

¶ 7 Respondent filed a response, claiming that petitioner's petition failed to sufficiently allege facts necessary to support an interim attorney fee petition under section 501(c-1). Respondent claimed that petitioner's annual income was at least $113,500, his annual income was approximately $48,000 and petitioner had access to assorted marital assets, including her $86,557 investment account and a $25,000 Roth individual retirement account (IRA). He stated that, since February 2010, petitioner had not contributed to the parties' joint expenses including mortgages, real estate taxes, rent and utilities for the former marital home and that respondent had been solely responsible for payment of the joint expenses. Respondent claimed that petitioner had sufficient income and access to marital assets from which to pay her own attorney fees and respondent did not have sufficient income and access to marital assets from which he could pay petitioner's fees.

¶ 8 On November 4, 2010, following a nonevidentiary hearing, the court denied petitioner's petition, finding that "the parties lack sufficient marital funds sufficient [*sic*] for an interim fee award" and "[petitioner] has a present ability to pay."

¶ 9 On March 19, 2012, petitioner filed a petition for interim and prospective attorney fees and costs (second petition) pursuant to sections 501(c-1) and 508. She asserted that she had paid her attorneys $26,931 and, as of February 29, 2012, owed them $21,040. Petitioner claimed that, although she was employed, her income was consumed by ongoing expenses, her cash resources were limited and her financial resources were "insufficient to enable her to continue to participate in these proceedings in any meaningful way without contribution from respondent for her reasonable attorney's fees and costs." She asserted that respondent was "in possession and control of substantial liquid and non-liquid assets" and had "interests in non-liquid assets such as retirement and investment accounts."

¶ 10    Petitioner asserted that she had "completely liquidated her retirement account in order to pay attorney's fees and costs *** and to pay other expenses." She stated that she was "entitled to an interim award of not less than $21,040 payable to her attorneys for reasonable fees and costs" and "a prospective award of not less than $30,000 payable to her attorneys for reasonable fees and costs." She asserted that "this amount is necessary to enable [her] to continue to participate adequately in this litigation" and, if not afforded this ability, her rights would be severely prejudiced. Petitioner requested that the court order respondent to pay interim attorney fees and costs "in the total amount of for [*sic*] past due fees of $21,040 as of February 29, 2012[,] plus $30,000 for prospective fees" and for such other relief as the court deemed equitable and just. Petitioner's second petition was signed by her attorney.

¶ 11    In support of her second petition, petitioner attached the retainer agreement she had executed with her attorney, her affidavit and her attorney's affidavit. In petitioner's affidavit, which was unsigned, she stated that her financial resources were insufficient to enable her to participate in the proceedings in a meaningful way, she had depleted her retirement account and had no other way to pay the costs and fees associated with the litigation. She stated that she had paid her attorneys $26,931 to date and, as of February 29, 2012, had an outstanding invoice of $21,040. She stated that all facts in the accompanying petition were true and correct.

¶ 12    In her attorney's affidavit, which was signed and notarized, he stated that petitioner "is currently without sufficient income or assets to pay attorney's fees and costs" incurred in the case. He also stated that respondent "possesses a superior financial ability to pay [petitioner's] interim attorney's fees and costs and prospective fees and should be ordered to pay the same so that petitioner may participate in this litigation."

¶ 13    In respondent's response to the second petition, he asserted that the second petition should be denied because the petition failed to prove petitioner's inability to pay and his ability to pay the parties' reasonable attorney fees as required by section 501(c-1). Respondent asserted that petitioner failed to attach to her petition an affidavit delineating her inability to pay fees and respondent's ability to pay. He also pointed out that petitioner's second petition was neither verified nor signed by her. Respondent further asserted that the petition should be denied because the court had previously denied petitioner's first fee petition and made findings that the parties lacked sufficient marital funds for an interim fee award and that petitioner had the present ability to pay her own attorney fees. Respondent lastly argued that the petition should be denied because it was not brought in good faith where petitioner earned more than double respondent's salary, did not contribute to the parties' household or investment expenses, had bought a Range Rover automobile, had incurred large credit card bills, had just returned from a two-week vacation to India with the couple's children and had the present ability to pay for her attorney fees. Respondent requested that the court deny petitioner's second petition or set a good cause hearing.

¶ 14    The court held a nonevidentiary hearing on the second petition on April 12, 2012. During the hearing, petitioner's counsel directed the court to the current and previous financial disclosure statements filed by the parties in the dissolution action pursuant to Cook County Local Rule 13.3.1 (Cook Co. Cir. Ct. R. 13.3.1 (eff. June 1, 2011)). He told the court that respondent had 1,750 shares of Apple stock, valued at $1,090,250. He argued the stock was

-4-

"liquid" and, although respondent's counsel claimed the stock was nonmarital, which petitioner neither admitted nor denied, "under 501(c), you can use nonmarital assets for the payment of *** legal fees."

¶ 15 Petitioner's counsel admitted that petitioner earned over $100,000 per year but asserted that she had a shortfall at the end of the month. He stated she had no assets left, except for a 401K account from which she had already borrowed $50,000 and could not borrow any more, and received no child support or maintenance. Counsel argued that petitioner's financial position was different than when she filed her first petition for interim attorney fees in October 2010. Since then, she had exhausted her money and lived month to month. Counsel argued that the court should level the playing field between the parties because respondent had the ability to pay the fees. He asserted that, as of three weeks before, respondent had over $1 million in liquid assets that could be used to pay the fees. In contrast, as petitioner stated in her affidavit, she had no money or assets to pay the attorney fees.

¶ 16 Respondent's counsel responded that petitioner was trying to get a second bite at the apple after the court had denied her first petition for interim attorney fees. She argued that petitioner was asking the court to reverse its previous findings that the parties' lacked sufficient marital assets from which to pay attorney fees and petitioner had the present ability to pay her fees.

¶ 17 Respondent's counsel argued that petitioner had failed to establish both her inability to pay and respondent's ability to pay attorney fees in the affidavits or in any other documents. Referring to the Rule 13.3.1 financial disclosure statements, counsel argued that petitioner earned more than double the salary that respondent earned. She also argued that section 501(c) specifically provides for advances from the marital estate, not the nonmarital estate. Counsel further asserted that half of the money referred to by petitioner's counsel was in a Roth IRA account and the court had no authority to order liquidation of a Roth IRA. She also claimed that the other half of the money was "tied up into securities and is heavily margined and mortgaged," the court had no authority to order liquidation of these assets either and to order such liquidation would deplete the only asset respondent had. Counsel asserted that respondent had been scraping funds together to contribute to the maintenance of the parties' two investment properties and petitioner had not contributed anything to these properties, which were in danger of foreclosure.

¶ 18 Respondent's counsel also asked the court "to note" that petitioner's second petition was legally insufficient. She pointed out that the petition was neither verified nor signed by petitioner and that counsel had yet to receive a signed and verified copy of the petition. She had that day received a facsimile transmission of an unnotarized verification page and a signed affidavit. Counsel asserted that the court should strike the request for fees because the petition was improperly pled and petitioner's counsel had no good-faith basis for filing the petition, having filed it simply to harass respondent's counsel and find out how much respondent had paid his counsel.

¶ 19 Petitioner's counsel responded, asserting:

"[T]o the extent that it [unclear whether counsel was referring to the petition or petitioner's affidavit] wasn't signed, that it [*sic*] was inadvertent, my client is standing

next to me. Now we did have it signed earlier today. We did send it over. Nothing has changed factually. My client will testify under oath that these are the right facts; this is her affidavit. And only through inadvertence we didn't send over the signed copy. *** That's sort of a technical thing that we have already corrected."

With regard to respondent's assertion that petitioner's pleading was deficient, counsel asserted that respondent had not filed a motion to strike and instead had filed a response.

¶ 20 Petitioner's counsel argued that nothing in the statute barred a party from filing a second petition for interim attorney fees. He claimed that petitioner's fees had increased from $7,400 to $56,000 over the two years of litigation since the court had found petitioner had a present ability to pay in October 2010. Counsel asserted that respondent's counsel did not explain the source of respondent's ability to pay his own legal fees, estimated to be in excess of $95,000, and to maintain the parties' properties.

¶ 21 In response to respondent's assertion that he only earned half of what petitioner earned, petitioner's counsel claimed this to be a "sham," asserting that respondent "allegedly works" for Castle Builders, a company solely owned by respondent's 65-year-old mother. Respondent's counsel objected, arguing that petitioner's counsel was improperly trying to introduce evidence that was not contained in the petition. Petitioner's counsel then asserted that respondent had a half million dollars in liquid assets as a result of the 1,750 shares of Apple stock, only half of which were in a Roth IRA account. Respondent's counsel objected, asserting that the 1,750 shares of Apple stock were not disclosed in the evidence, mentioned in the petition or reflected in any of the Rule 13.3.1 financial disclosure statements. Petitioner's counsel responded that he knew these accounts existed because he had taken respondent's deposition and he could argue the existence of the stocks on a nonevidentiary basis because it was in respondent's sworn testimony.

¶ 22 The court expressed that, in order to grant interim attorney fees, there had to be a change in circumstances from the time the court denied the first petition. Petitioner's counsel responded that what changed was the amount of the fees due and owing: $4,000 in 2010 and $26,000 in 2012. Counsel acknowledged that petitioner's salary had increased by $3,000 but asserted that respondent's ability to pay had also increased when his Apple stock went from $390 a share to $633 a share over the past two years. Counsel also stated that petitioner's assets had changed given that she had borrowed $50,000 from her 401K deferred compensation account and had depleted that account. Petitioner's counsel summarized by saying that petitioner had paid $26,000 in attorney fees, had gone into debt to pay those fees and now owed an additional $26,000. He argued that those facts were not present at the time of the first petition, when petitioner had paid $7,400 and owed $4,000. By counsel's calculation, respondent had paid $95,495 in attorney fees and petitioner had paid $26,000, a difference of $70,000. Petitioner's counsel stated that petitioner had the ability to pay in 2010 but had exhausted that ability over the following two years. She no longer had the ability to pay but respondent did. He requested the court to level the playing field by ordering that respondent pay petitioner's attorneys $70,000. Respondent's counsel responded that there had been no change in circumstances since denial of the first petition.

¶ 23 On April 13, 2012, the court granted petitioner's second petition for interim attorney fees,

awarding her $69,000 in interim and prospective attorney fees. It held:

"(1) Petitioner's petition is supported by affidavit of petitioner and her counsel and delineated her current financial status including income and assets.

(2) Petitioner has adequately provided proof of Respondent's current financial status, including marital and nonmarital assets and his income, all of which the court can consider in determining an interim and prospective fee award.

(3) Respondent relies on [*In re Marriage of Radzik*, 2011 IL App (2d) 100374,] as a basis, in part, to deny Petitioner's petition. However, the court finds this case distinguishable from [*Radzik*], in that the Appellate court held that the trial court abused its discretion in determining that the Petitioner established respondent's ability to pay, because it received virtually no evidence regarding respondent's present ability to pay the amount the court has awarded. In this case, the Respondent, it has been shown, has in excess of $700,000.00 in a non-marital estate, which the court may take into consideration. Moreover, in [*Radzik*], the court did not know the extent of the marital assets or available assets. The marital and non marital estate is clear in this case.

(4) While Petitioner's income is double that of the Respondent's, and she has approximately $50,000.00 remaining in a 401(k), Petitioner has shown that the income is not sufficient to pay the outstanding and prospective fees and the 401(k) funds are not available after having taken funds from it previously for attorney's fees, among other things.

(5) The court finds further, that Petitioner's income and 401K, notwithstanding, neither part[y's] estate should be exhausted, nor their economic stability undermined ([*Radzik*, 2011 IL App (2d) 100374]). In this case Respondent clearly has the ability to pay and Petitioner does not have the present ability to pay and the 'playing field should be leveled.'

Wherefore it is hereby ordered:

1. Respondent shall pay Petitioner's interim and prospective attorney's fees in the amount of $69,000.00, which shall equal the amount of attorney's fee[s] that Respondent has paid his attorneys, considering the $26,000.00 Petitioner has paid her attorneys.
***
3. The award of interim and prospective fees is entered without prejudice."

¶ 24    On May 7, 2012, respondent filed a motion to reconsider the order. He asserted that petitioner's second petition did not meet the requirements of section 501(c-1) because the petition was signed by petitioner's attorney but not verified by petitioner, petitioner's affidavit lacked specific details concerning petitioner's and respondent's respective incomes, assets and financial ability, her affidavit contained "self-serving conclusory statements" and the petition was not supported by any financial or other documents establishing petitioner's inability to pay attorney fees and respondent's ability to pay the fees. He argued that the court should have either denied petitioner's second petition because it lacked sufficient nontestimonial evidence or granted respondent an evidentiary hearing as he had requested.

¶ 25    On June 4, 2012, petitioner filed her response to respondent's motion to reconsider. She

admitted that her second petition was signed by her attorney but asserted that "the error in not providing counsel with a signed copy of the Second Petition was corrected" and respondent did not argue at the hearing that the petition was deficient because it was unsigned at the time it was originally served on respondent's counsel. Petitioner denied that her affidavit was self-serving and conclusory. She admitted that no financial documents were attached to the second petition but asserted that each party's financial disclosure statements were provided to the court at the time of the hearing. Petitioner also asserted that section 501(c-1) neither required that she make allegations in her affidavit regarding respondent's financial ability nor that private financial documents be attached to a petition for interim attorney fees. She also pointed out that nowhere in his response did respondent deny that he had the ability to pay petitioner's attorney fees.

¶ 26       On July 12, 2012, the trial court denied respondent's motion to reconsider, finding that "[t]he court was within its discretion to consider alleged marital property within the sole control of one party and alleged non-marital property within the access [of] a party." It further stated:

"The order was entered without prejudice and is a temporary order entered to enable the petitioning party to participate adequately in the litigation upon the court[']s finding that the party from whom attorney's fees and costs were sought has the financial ability to pay reasonable amounts and that the party seeking the fees and costs lacked sufficient access to assets or income to pay reasonable amounts."

¶ 27       On July 20, 2012, the court entered an agreed order giving respondent seven days within which to tender the $69,000 to petitioner's counsel. On July 31, 2012, respondent having failed to tender the $69,000, petitioner petitioned the court for a rule to show cause as to why respondent should not be held in indirect civil contempt of court for his failure to abide by the order of July 20, 2012.

¶ 28       On September 4, 2012, the court held respondent in contempt for his failure to pay the $69,000 in fees and ordered that "respondent may purge himself by paying said $69,000 within 14 days." Respondent failed to pay the award within the 14 days and petitioner moved for sanctions and issuance of a body attachment against respondent. On September 27, 2012, the court found that respondent had not purged himself of contempt and ordered that respondent "is sanctioned for his contempt the penalty/fine of $10.00 per day until the sum of $69,000 in fees is paid in full."

¶ 29       Respondent filed a timely notice of appeal on September 28, 2012, appealing the court's orders sanctioning him for contempt of court for failing to pay the fee award, holding him in contempt of court and requiring him to pay $69,000 in interim attorney fees.

¶ 30                                          ANALYSIS

¶ 31       Respondent argues that we should reverse the court's order requiring him to pay petitioner's attorney $69,000 in interim and prospective attorney fees as (1) the court abused its discretion in awarding $69,000 in fees to petitioner because her petition fails to demonstrate her inability to pay attorney fees and respondent's ability to pay; and (2) the court lacked jurisdiction to award petitioner interim fees in the amount of $69,000 when her

petition requested only $51,040 in fees. He also requests that we reverse the contempt finding against him because "[i]t follows that if the interim fee award is reversed, the contempt order upon which it based will not stand."

¶ 32                                  1. Order Awarding Interim Attorney Fees

¶ 33     The court awarded petitioner's attorney interim and prospective attorney fees under section 501(c-1) of the Act. Section 501(c-1) allows a trial court, while a case is pending, to assess attorney fees and costs in favor of the petitioning party's counsel. *In re Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 40; 750 ILCS 5/501(c-1) (West 2010). "[I]nterim attorney's fees and costs" as used in section 501(c-1) means attorney fees and costs "either already incurred or to be incurred." 750 ILCS 501(c-1) (West 2010).

¶ 34     The party seeking interim attorney fees must demonstrate that "the party from whom attorney's fees and costs are sought has the financial ability to pay reasonable amounts and that the party seeking attorney's fees and costs lacks sufficient access to assets or income to pay reasonable amounts." 750 ILCS 5/501(c-1)(3) (West 2010). In other words, the seeking party must demonstrate that she has the inability to pay and the other party has the ability to pay both parties' fees. *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 320 (2001). "In enacting section 501(c-1), the legislature's goal was to level the playing field by equalizing the parties litigation resources where it is shown that one party can pay and the other party cannot." *In re Marriage of Beyer*, 324 Ill. App. 3d at 315.

¶ 35     "Except for good cause shown, a proceeding for (or relating to) interim attorney's fees and costs in a pre-judgment dissolution proceeding shall be nonevidentiary and summary in nature." 750 ILCS 5/501(c-1)(1) (West 2010). However, a petition for interim fees and costs must be " 'supported by one or more affidavits that delineate relevant factors.' " *Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 40 (quoting 750 ILCS 5/501(c-1)(1) (West 2010)). Relevant factors to be considered by the court include the following:

> "(A) the income and property of each party, including alleged marital property within the sole control of one party and alleged non-marital property within access to a party;
>
> (B) the needs of each party;
>
> (C) the realistic earning capacity of each party;
>
> (D) any impairment to present earning capacity of either party, including age and physical and emotional health;
>
> (E) the standard of living established during the marriage;
>
> (F) the degree of complexity of the issues, including custody, valuation or division (or both) of closely held businesses, and tax planning, as well as reasonable needs for expert investigations or expert witnesses, or both;
>
> (G) each party's access to relevant information;
>
> (H) the amount of the payment or payments made or reasonably expected to be made to the attorney for the other party; and
>
> (I) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/501(c-1)(1) (West 2010).

¶ 36   If the court finds that "the party seeking fees lacks 'access to assets or income' to pay reasonable amounts and that the party from whom fees are sought does have the financial ability to pay reasonable amounts, the court shall assess an interim fee award in 'an amount necessary to enable the petitioning party to participate adequately in the litigation.' " *In re Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 42 (quoting 750 ILCS 5/501(c-1)(3) (West 2008)). An award of interim attorney fees and costs is considered an advance from the parties' marital estate. *In re Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 43 (citing 750 ILCS 5/501(c-1)(2) (West 2010)).

¶ 37   We review the court's award of interim attorney fees for an abuse of discretion. *In re Marriage of Levinson*, 2013 IL App (1st) 121696, ¶ 34. We will not reverse the court's award unless the court " 'acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted' " and no reasonable person would take the view adopted by the court. *In re Marriage of Levinson*, 2013 IL App (1st) 121696, ¶ 34 (quoting *In re Marriage of Aud*, 142 Ill. App. 3d 320, 326 (1986)).

¶ 38   "[A] court order awarding interim attorney fees under section 501(c-1) of the Act is not an appealable interlocutory order." *In re Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 45. "However, when a party appeals from a contempt sanction imposed for violating an interim fee order, the contempt finding is final and appealable and presents to the reviewing court the propriety of the underlying order." *In re Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 45. Respondent timely appealed from the court's contempt sanction imposed for his failure to comply with the order assessing the $69,000 interim attorney fees. Therefore, we review the propriety of the underlying order assessing the fees. We find no abuse of discretion in the court's interim and prospective fee award.

¶ 39   Respondent argues that the trial court abused its discretion in awarding $69,000 for interim attorney fees because:

(a) The petition was insufficient as petitioner's unsigned affidavit did not state that respondent had the ability to pay her attorney fees, her attorney's affidavit merely made the conclusory statement that respondent had a superior ability to pay fees and neither the petition's nor the affidavits' conclusory allegations that petitioner was unable to pay and respondent was able to pay attorney fees were supported by nontestimonial evidence.

(b) There were no material differences in the parties' financial circumstances between the 2010 denial of the first petition and the 2012 grant of the second petition sufficient to warrant the interim fee award.

(c) The evidence that petitioner's salary was double respondent's salary, petitioner made nonessential expenditures on a new Range Rover and a trip to India and respondent maintained the parties' investment properties and marital home with no contribution from petitioner showed that petitioner's economic status would not be undermined if she was required to pay her own attorney fees. Further, even if the court was correct in finding that petitioner was unable to pay her attorney fees, the evidence showed respondent clearly lacked the ability to do so.

(d) There was no evidence showing an increase in the marital estate since the court

-10-

found the parties "lack[ed] sufficient marital funds" to support an award for interim attorney fees in 2010 and, therefore, there was not sufficient marital funds to advance petitioner $69,000 in interim fees in 2012.

¶ 40 Respondent notes that petitioner's affidavit was not signed, and therefore, her petition was not in compliance with the requirements of section 501(c-1) of the Act. Our review of the record shows that respondent did not move to strike the petition on the basis of an insufficient affidavit but, rather, filed a response. Also, the transcript of the April 12, 2012, hearing shows that petitioner's attorney told the court that it had corrected the error prior to the hearing by sending respondent's counsel a copy of the signed petition and affidavit. Respondent's counsel acknowledged receiving the signed pages and did not object to this alleged correction or assert its inadequacy during the hearing.

¶ 41 Further, the court apparently considered the correction acceptable, stating in its April 13, 2013, order granting the second fee petition that "petitioner's petition is supported by affidavit of petitioner and her counsel" and making no further comment regarding an unsigned, unverified petition or affidavit. Moreover, section 501(c-1) of the Act requires only one affidavit to support the relevant facts. Therefore, even if petitioner's affidavit had been stricken, petitioner's attorney's affidavit standing alone would have been sufficient to comply with the requirements of a fee petition. We hold that petitioner's interim fee petition and affidavit, as corrected, complied with the requirements established in section 501(c-1) of the Act.

¶ 42 With regard to respondent's other contentions that the court abused its discretion in awarding petitioner interim attorney fees, we find the record inadequate to support respondent's arguments. The transcript of the April 12, 2012, hearing and the court's April 13, 2013, order granting interim attorney fees show that the court based its decision not only on petitioner's petition and the affidavits attached thereto but on the then current and previous financial disclosure statements filed by the parties in the dissolution of marriage action pursuant to Cook County Circuit Court Rule 13.3.1.[1] Petitioner's counsel initially brought the disclosure statements to the court's attention during the hearing. The statements were before the court already in the context of the parties' dissolution proceeding but

---

[1]Rule 13.3.1 provides:
"In all pre-judgment proceedings in which a party is seeking division of the marital estate, to establish, modify or enforce an order for maintenance, child support or educational expenses pursuant to Section 513 of the Illinois Marriage and Dissolution of Marriage Act, disposition of property in a civil union, retroactive child support in parentage matters, or an award of fees and costs against the other party, each party shall serve a completed disclosure statement of incomes, expenses, and assets ('Disclosure Statement') upon the other party on forms approved by the court. ***
* * *
When further relief is sought from the court and a material change of circumstances has occurred, an updated completed 'Disclosure Statement' must be served on the other party no less than seven (7) days prior to any hearing." Cook Co. Cir. R. 13.3.1 (eff. June 1, 2011).

petitioner had not attached them to her second fee petition. Respondent's counsel, however, did not object to consideration of the statements during the hearing. Indeed, counsel for both parties referred to the disclosure statements extensively during the hearing and the court relied on the statements in making its decision on the petition. The court's April 13, 2013, order states "Petitioner has adequately provided proof of Respondent's current financial status, including marital and nonmarital assets and his income" and "[t]he marital and nonmarital estate is clear in this case." This information could only have come from the financial statements and the arguments related thereto. However, the disclosure statements are not in the record on appeal.

¶ 43 Without being able to review the disclosure statements, we cannot determine whether, as respondent asserts, there was insufficient nontestimonial evidence to support petitioner's petition and her assertion that she was unable to pay attorney fees but respondent was able to pay. Without the disclosure statements, we cannot determine whether, as respondent asserts, there was no material change in the parties' circumstances between the time the court denied the first petition for interim fees and the hearing on the second petition. We cannot determine whether there were insufficient marital funds from which to award petitioner $69,000 in interim fees. In other words, without the disclosure statements, we cannot determine whether there is any factual support for respondent's remaining arguments that the court abused its discretion in awarding the interim attorney fees.

¶ 44 As petitioner correctly points out, the appellant has the burden to provide a sufficiently complete record of the trial proceedings to support a claim of error on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). In the absence of such a complete record, we presume "that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 392. Petitioner, therefore, argues that, since we cannot review the Rule 13.3.1 disclosure statements on which the court relied, we should presume that the statements were sufficient nontestimonial evidence to support the court's explicit findings and its April 13, 2013, order awarding interim attorney fees.

¶ 45 Citing *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. & Co.*, 195 Ill. 2d 356 (2001) (*Callis II*), respondent responds that petitioner cannot claim the benefit of an insufficient record on appeal when the reason that the financial statements are not in the record is because petitioner, the proponent of this evidence, did not move to admit the statements into evidence. He asserts that, if petitioner sought to rely on the Rule 13.3.1 disclosure statements in support of her second petition, it was her obligation, not respondent's, to file those statements in the trial court so that they would be a part of the record.

¶ 46 In *Callis II*, the appellee had called the supreme court's attention to the fact that the circuit court had based its ruling in favor of the appellee on the " 'entire record,' including the 'case and contents of the case file *** [No.] 96 CH 253 [a previous circuit court proceeding, subsequently affirmed on appeal in *Callis, Papa, Jensen, Jackstadt & Halloran, P.C. v. Norfolk Southern Corp.*, 292 Ill. App. 3d 1003 (1997) (*Callis I*)]' " and that the record on appeal did not contain these *Callis I* materials. *Callis, Papa, Jackstadt & Halloran, P.C.*,

195 Ill. 2d at 364.[2] The appellee argued that, because the *Callis I* file was not in the record on appeal, the appellant had presented an " 'incomplete record of the matters considered by the circuit court.' " *Id.* It suggested that the supreme court "employ a presumption, utilized on appeal where the record is incomplete, that the circuit court's ruling was in conformity with the law and had a sufficient factual basis." *Id.* The court "decline[d]" the suggestion. *Id.* at 365.

¶ 47    The court stated that, as required by Illinois Supreme Court Rule 321 (eff. Feb. 1, 1994), the record on appeal included "every document filed by the parties, along with all orders of court." *Callis, Papa, Jackstadt & Halloran, P.C.*, 195 Ill. 2d at 365. It noted that the appellee had asked the circuit court to take judicial notice of the earlier case but had not filed a copy of the case file documents with the circuit court.[3] *Id.* The supreme court held that, therefore, "fault for the case file's omission from the common law record lies not with the [appellant] but rather with the proponent of the evidence[, the appellee]." *Id.*

¶ 48    Respondent asserts that, as required by Illinois Supreme Court Rule 321, he included every document filed in the case and all orders of the court in the record on appeal. He argues that the fault for the omission of the disclosure statements from the record on appeal lies with petitioner because, if petitioner wanted the disclosure statements to be part of the record on appeal, she, as the proponent of the evidence, should have filed them with the circuit court. Respondent argues that we should follow our supreme court in *Callis, Papa, Jackstadt & Halloran, P.C.*, and "decline" to employ the presumption that, where the record on appeal is incomplete, the circuit court's ruling was in conformity with the law and had a sufficient factual basis. We find *Callis, Papa, Jackstadt & Halloran, P.C.* to be distinguishable.

¶ 49    Petitioner was, indeed, a proponent of the disclosure statements. Her counsel was the first to raise the financial disclosure statements during the hearing on the second petition and relied on those statements to support petitioner's assertion that her petition was adequate to show that she was unable to pay attorney fees and respondent was able to pay the fees. However, respondent did not object to discussion of the statements, even though they had not been attached to the second petition. More importantly, unlike in *Callis, Papa, Jackstadt & Halloran, P.C.*, here both parties were proponents of the evidence.

¶ 50    The report of proceedings shows that respondent repeatedly referenced the same disclosure statements in order to show that petitioner's petition was insufficient to show there had been no change in the parties' circumstances between 2010 and 2012 and to challenge petitioner's assertion that she did not have the ability to pay the fees and respondent did have the ability to pay the fees. Respondent relied on the data in both his disclosure statements and petitioner's disclosure statements to prove that he did not have the ability to pay petitioner's

---

[2]The appellate court had affirmed the circuit court's order in an unpublished summary order, "holding that the case at bar was indistinguishable from the issues and facts previously addressed in *Callis I*." *Callis, Papa, Jackstadt & Halloran, P.C.,* 195 Ill. 2d at 363.

[3]The appellee was the plaintiff below and had requested the circuit court to take judicial notice of the *Callis I* decision in support of its cause of action for injunctive relief against the defendant-appellant. *Callis, Papa, Jackstadt & Halloran, P.C.*, 195 Ill. 2d at 363.

attorney fees and that petitioner did have the ability to pay the attorney fees. Despite this reliance, he did not move to have the statements admitted. As both parties relied on each other's financial disclosure statements, we find *Callis, Papa, Jackstadt & Halloran, P.C.* to be inapposite. It therefore remains respondent-appellant's obligation to assure that there is an adequate record of the matters considered by the trial court.

¶ 51 Both parties based their arguments on the data included in these statements and it is clear that the court considered them in making its ruling. As the statements were never admitted into evidence and are thus not a part of the record on appeal, we are left with an inadequate record on appeal to consider respondent's assertions that the court abused its discretion in awarding the interim attorney fees. Accordingly, we presume that the court had a sufficient basis for its decision and affirm the court's award of interim attorney fees to petitioner.

¶ 52                                2. Jurisdiction to Enter $69,000 Award

¶ 53 Respondent argues that the court had no jurisdiction to award petitioner $69,000 in attorney fees where petitioner requested only $51,040 in her petition. The court did not lack jurisdiction to award $69,000 in interim attorney fees and costs to petitioner. First, petitioner did not request only $51,040 in her petition. Granted, in the *ad damnum* clause in petitioner's petition, she requested interim attorney fees and costs "in the total amount of for [*sic*] past due fees of $21,040 as of February 29, 2012[,] plus $30,000 for prospective fees." However, in her *ad damnum* clause, she also requested "such other relief as the court deemed equitable and just." Further, in paragraph 16 of the petition, she asserted she was "entitled to an interim award of not less than $21,040 payable to her attorneys for reasonable fees and costs" and "a prospective award of not less than $30,000 payable to her attorneys for reasonable fees and costs." Lastly, during the hearing on the petition, her counsel twice requested $70,000 in interim attorney fees without any objection by respondent. The court and respondent were clearly on notice that petitioner sought more than $51,040 in interim attorney fees and costs.

¶ 54 Second, section 501(c-1) specifically provides that "an interim award shall not be less than payments made or reasonably expected to be made to the counsel for the other party." 750 ILCS 501(c-1)(3) (West 2010). The record shows that, at the time of the hearing on the interim fee petition, respondent had paid a total of $95,495 in fees and costs to his attorneys. Petitioner had paid $26,931 to her attorneys, almost $69,000 less than respondent had paid his attorneys. She already owed her attorneys an additional $21,040 in fees and costs and, as shown by her petition, she and her attorney anticipated that the proceedings between the parties were far from over. The court clearly had jurisdiction under section 501(c-1) to award petitioner interim attorney fees in order to level the playing field between the parties and allow petitioner to significantly participate in the remaining litigation. It also had jurisdiction to award her interim attorney fees in an amount equal to, with the $26,931 she had already paid, the amount respondent had paid to his attorneys. The court did not err in awarding $69,000 in attorney fees to petitioner.

¶ 55                                        3. Contempt Order

¶ 56 Respondent argues that, if the order assessing the $69,000 interim fee award is reversed,

-14-

the finding of contempt and imposition of sanction based on that order "will not stand" and must be reversed. This is the entirety of his argument regarding the court's finding of contempt and imposition of sanctions. " 'The power to enforce an order to pay money through contempt is limited to cases of wilful refusal to obey the court's order.' " *In re Marriage of Barile*, 385 Ill. App. 3d 752, 758 (2008) (quoting *In re Marriage of Logston*, 103 Ill. 2d 266, 285 (1984)). We will not reverse the court's finding of contempt absent an abuse of the court's discretion. *In re Marriage of Barile*, 385 Ill. App. 3d 752, 759 (2008).

¶ 57      Respondent's failure to pay interim attorney fees as ordered is *prima facie* evidence of contempt. *In re Marriage of Petersen*, 319 Ill. App. 3d 325, 332 (2001). Once that *prima facie* case was shown, respondent had the burden "to prove that the failure to make *** payments was not willful or contumacious and that there exists a valid excuse for his failure to pay." *In re Marriage of Barile*, 385 Ill. App. 3d 752, 759 (2008). The financial inability to comply with a court order "must be shown by definite and explicit evidence." *In re Marriage of Petersen*, 319 Ill. App. 3d at 333. Nothing in the record shows that respondent made any effort to demonstrate that his failure to pay was not contumacious or willful nor does respondent assert otherwise on appeal. Indeed, as addressed above, the court did not abuse its discretion in finding that respondent did have the ability to pay $69,000 in interim attorney fees.

¶ 58      We grant "that exposing one's self to a finding of contempt is an appropriate method of testing the validity of a court order." *In re Marriage of Beyer*, 324 Ill. App. 3d at 321. "Further, where a refusal to comply with the court's order constitutes a good-faith effort to secure an interpretation of an issue without direct precedent, it is appropriate to vacate a contempt citation on appeal." *In re Marriage of Beyer*, 324 Ill. App. 3d at 321-22. However, no novel issue is involved in this case. Respondent never requested that he be held in contempt and sanctioned in a good-faith effort to secure an interpretation of an issue with no direct precedent.

¶ 59      Instead, to paraphrase the court in *In re Marriage of Levinson*, 2013 IL App (1st) 121696, respondent is attempting to circumvent the directives of section 501(c-1)(d) of the Act, which specifies:

> "(d) A temporary order entered under this Section:
>
> ***
>
> (2) may be revoked or modified before final judgment, on a showing by affidavit and upon hearing; and
>
> (3) terminates when the final judgment is entered or when the petition for dissolution of marriage or legal separation or declaration of invalidity of marriage is dismissed." 750 ILCS 5/501(d)(2), (3) (West 2010).

"The Act does not allow for parties to generally test the validity of interim fee awards under the guise of a 'friendly contempt' merely because the party does not agree with the award." *In re Marriage of Levinson*, 2013 IL App (1st) 121696, ¶ 56. Nothing in the record shows that respondent had a more compelling justification for not paying the award beyond his disinclination to pay it. Accordingly, we affirm the circuit court's orders holding respondent in contempt of court and imposing sanctions for his failure to purge the contempt. The

purpose of imposing an indirect contempt order and its sanctions is to coerce compliance. *Levinson*, 2013 IL App (1st) 121696, ¶ 52. As we affirm the fee award in question and the award has yet to be paid, we leave it to the trial court to determine whether it is appropriate to vacate the contempt order in the event its order is ultimately followed.

¶ 60                                   CONCLUSION
¶ 61        For the reasons stated above, we affirm the orders of the circuit court.

¶ 62        Affirmed.